UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| WAYNE TOLES, | ) |
| | ) |
|     Plaintiff, | ) |
| | )   1:12-cv-704- SEB-DML |
| vs. | ) |
| | ) |
| MILLER VENEERS, INC., | ) |
| | ) |
|     Defendant. | ) |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(Dkt. No. 27)

This case arises out of Plaintiff's employment with Defendant for a period of approximately one month. Plaintiff claims that he was discriminated against, and ultimately terminated, because of his race. Now before the Court is Defendant's Motion for Summary Judgment.

## PROCEDURAL HISTORY

Plaintiff filed this *pro se* action on May 23, 2012, and amended his complaint shortly thereafter. His Amended Complaint avers: "I was discrnade [sic] by Vickie Thompson and other menagers [sic] at Miller Veneers, Inc. I believe that my race was the reason they wanted me to quit. I did not. I was fired. I was harass [sic] by my supervisor Vickie Thompson. My race playde [sic] a part of that. I am suiing [sic] Meller [sic] Veneers [sic] discrimination for my race." [Plaintiff's Amended Complaint at p. 2 (Dkt. No. 5) (underline in original).]

Defendant denied the allegations in Plaintiff's Amended Complaint and filed its Motion for Summary Judgment. Plaintiff's response to Defendant's Motion for Summary Judgment was due on September 12, 2013, but Plaintiff did not respond by that deadline. Recognizing Plaintiff's status as a *pro se* litigant, the Court, *sua sponte*, granted him an extension of time through and including

October 11, 2013, but Plaintiff did not respond by that deadline, either. In fact, Plaintiff has filed nothing in this case since July 8, 2013, on which date he notified the Court that he was "currently an inmate at [sic] Hamilton County Jail due to a misunderstanding with his vehicle and the person responsible for repairs." [Plaintiff's Motion for Continuance (Dkt. No. 25).]

## **FACTS**[1]

In the spring of 2011, Defendant, a company engaged in the manufacture of hardwood veneers, decided to experiment with a new production method. To that end, it hired six new employees, including Plaintiff (a black male), Matt Jordan (a white male), Bethany Marell (a white female), Byron Ravanales (a Hispanic male), Keith Rhodes (a white male) and Lennell Moore (a black male). All six new employees began work on May 23, 2011. For the first six months of their employment, these new employees, like all of Defendant's new hires, were considered to be probationary employees subject to termination for any non-discriminatory reason. After the first six months of employment, the relationship between Defendant and its employees, including the terms upon which employees could be terminated, was governed by Defendant's collective bargaining agreement with Local 2918 of the International Association of Machinists and Aerospace Workers Union.

Almost immediately after adding the six new employees to its workforce, Defendant realized that it had over-hired, was over-staffed, and needed to lay off one person. Under the terms of the applicable collective bargaining agreement, Defendant was required to lay off all probationary employees before it could lay off any union members. Although Defendant considered Plaintiff's job performance to be satisfactory, it also observed that his performance was the weakest relative

---

[1] Defendant's Motion for Summary Judgment sets forth the following facts, which are supported by citations to admissible evidence found in the record.

2

to the five other new hires and, because Plaintiff was the weakest performing probationary employee at that point in time, Defendant decided to let him go. Plaintiff's employment with Defendant thus ended on or about June 24, 2011. Defendant moved a union Hispanic worker into Plaintiff's position and another position with the manufacturing facility was eliminated.

In the summer of 2011, Defendant determined that the new production method was not working out and would have to be discontinued. The discontinuation of said production line and the jobs on that line resulted in additional lay offs, and, by October of 2011, Defendant had let go all but one of the six persons who began working for the company on May, 23, 2011 – i.e., the day that Plaintiff hired on. The only person who hired on with the company on May 23, 2011 that was not laid off as a result of Defendant's over-hiring in connection with the failed production line was Lennell Moore (a black male). Moore is still employed with Defendant and has since been promoted to a management position.

## STANDARD OF REVIEW

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If the moving party supports its motion for summary judgment with affidavits or other materials, the burden shifts to the non-moving prty to show that an issue of material fact exists. Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund, 791 F.2d 548, 588 (7th Cir. 1986).

## DISCUSSION

Although Plaintiff's Amended Complaint asserts that Defendant discriminated against him because of his race in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, Plaintiff has not come forward with any evidence in support of his claims. In contrast, Defendant

3

has come forward with credible evidence explaining why Plaintiff was laid off – evidence that has nothing to do with Plaintiff's race, but rather Defendant's experimentation with the new, but ultimately unsuccessful, production line that required fewer workers than Defendant had on its staff at the time, requiring the reduction resulting in Plaintiff's termination. Defendant has also come forward with credible evidence that it employs a relatively diverse workforce and has promoted African American individuals to management positions. Most persuasive, however, Defendant has come forward with Plaintiff's own words, which defeat Plaintiff's claims in this action.

### A. Employment Discrimination Based on Race

Although Plaintiff contends that he was terminated because of his race, his deposition testimony disproves that claim. Indeed, Plaintiff testified:

> Q: Do you believe you were fired because you were black?
>
> A: I don't believe I was fired because I was black. I believe I was treated wrongly on the job because I was black.
>
> Q: But you don't believe that you were laid off because you were black?
>
> A: No.

[Plaintiff's Dep., p. 42, l. 17 - 24.]

> Q: Miller Veneers claims that you were terminated because they were overstaffed, do you think – do you have any evidence that that's not true, that they were overstaffed?
>
> A: I don't know, because you know how many people you need to hire to run your company. You know, if you need five people, you might hire six, and if you need three you may hire four, and out of that four somebody might bite the bullet, you know. But, no I don't believe that was the case. And, I believe, in my opinion, the reason there was so much favoritism with all the other employees there . . . I didn't have a relative working there. I think it was a – it's a family owned company with a family unit that they try to build within the company, it's a family thing, and I think I wasn't part of that family.

4

> If I had a relative working there, I probably would still be there. . . .
> If my father worked there . . . .I don't think I would have been yelled
> at on a daily basis for anything.

[Plaintiff's Dep., p. 185, l. 8 - p. 186, l. 13.]

Because Plaintiff testified under oath that he believes he was fired, <u>not</u> because he was black, but because of "favoritism" and Defendant's preference for employees with family members who also work for the company, Plaintiff's own words defeat his claim that he was terminated because of his race.

## **B. Hostile Work Environment Based on Race**

Plaintiff's own words also defeat his race-based hostile work environment claim. On deposition, Plaintiff testified:

> Q: Let's go back to your complaint. I think you also state that race
> played a part in the harassment by Vickie [Plaintiff's supervisor.] Is
> the harassment different than the discrimination that we just talked
> about or is that the same thing?
>
> A. I would think it would be the same thing.
>
> Q: So if I was to ask you specifically [what] Vickie did, you would
> tell me the same thing that we just talked about, that she yelled at you
> and didn't yell at others?
>
> A: Uh-huh.

[Plaintiff's Dep., p. 39, l. 3 - 13 (Dkt. No. 27-9).]

> Q: The complaint also says that you were discriminated against by
> other managers at Miller Veneers. What other managers?
>
> A: Well, I wouldn't actually say discrimination by other managers,
> but it came to a point to where I was constantly told to do my job by
> the managers. . . . . I wouldn't say that discrimination came from any
> manager other than my supervisor.
>
> Q: Which was Vickie?

> A: Yeah.

[Plaintiff's Dep., p. 39, l. 14 - p. 40, l. 9.]

> Q: Did Vickie ever make any racial comments to you?
>
> A: No.

[Plaintiff's Dep., p. 39, l. 1 - 2.]

> Q: Now you said you believe Vickie yelled at you because of your race. Why do you think that?
>
> A: Well, because I was the only African America male over there working on the clippling line, I was the only African American male working under her supervision, and I was the only person that she was verbally, you know, in my opinion, abusive to. So, I come to the conclusion if you don't know me, I never done anything to you, what other reason for treating me like this. So I couldn't draw but one conclusion; either it was my sex, my race, my age or – you know that's the only conclusion I could come to.

[Plaintiff's Dep., p. 40, l. 20 - p. 41, l. 7.]

> Q: Do you believe she discriminated against you based on your age?
>
> A: No.
>
> Q: Do you believe she discriminated against you based on your sex?
>
> A: No.
>
> Q: So you believe it's just your race?
>
> A: Uh-huh.

[Plaintiff's Dep., p. 41, l. 22 - p. 42, l. 4.]

Summary judgment is the "put up or shut up" moment in litigation — i.e., the point at which the non-moving party must marshal and present to the court the evidence that he contends will prove his case. Porter v. City of Chicago, 700 F.3d 994, 956 (7th Cir. 2012). "Conclusory allegations, unsupported by specific facts will not suffice." Id. However, conclusory allegations unsupported

by specific facts were all that Plaintiff had to offer at the time of his sworn deposition. Indeed, all he had to offer was his "conclusion" and his "opinion" that his supervisor, Vickie, must have yelled at him because of his race.

The Court notes that Defendant included in its Designation of Evidence a document titled "Plaintiff's Timelined Statement of Events Supporting Claim." [Dkt No. 27-11.] That document, apparently prepared by Plaintiff, describes the various things that Vickie said or did that Plaintiff considered to be discriminatory or harassing. Significantly, the document is *unsworn and unsigned*. It is, therefore, unreliable. However, even if it were reliable, the incidents described therein would not give rise to liability. For example, Plaintiff complained that on one particular date, Vickie failed to acknowledge him when he wished her "Good morning." Id. On another date when Plaintiff got a splinter in his hand, Vickie told him, "Take care of it when you get home!" Id. On multiple occasions Vickie yelled at him for leaving his post, including a time when he was away from his post because she directed him to go stack lumber and a time when he was sick and had gone to the restroom to vomit. Id. And, once, when Vickie was walking by with some lumber, the lumber struck Plaintiff in the back of the head. Plaintiff remarked that he was in pain, and Vickie responded in "a sarcastic and unforgiving manner," saying, "At least you're not bleeding!" Id.

Even if these incidents are true, they are not the type of threatening, humiliating, severe or pervasive conduct that gives rise to liability for a race-based hostile work environment. Indeed, there is no evidence that any of these incidents, assuming they did occur, had anything to do with Plaintiff's race and, significantly, Plaintiff testified on deposition that neither Vickie nor anyone else working for Defendant ever made any racial comments to him. Plaintiff may not have liked the tone or frequency of Vickie's remarks to him, and he may have thought he did not deserve her critical assessment of his work performance, but Plaintiff's speculation that racial hostility is the only

7

plausible explanation for her conduct is simply that – speculation – and that is not enough to prevail on this claim.

Because Plaintiff has not come forward with any evidence that he was: (1) subjected to a hostile work environment because of his race; (2) terminated from his job because of his race; (3) treated differently than similarly situated employees because of his race; or (4) that Defendant's stated reason for laying him off was pretextual, Defendant is entitled to the entry of summary judgment in its favor.

## **CONCLUSION**

For the reasons stated above, Defendant's Motion for Summary Judgment is GRANTED. A separate judgment shall issue.

IT IS SO ORDERED.

Date: 02/03/2014

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Cynthia A. Bedrock
MCNEALY STEPHENSON THO' &
HAROLD
cabedrick@msth.com

Jody M. Butts
MCNEALY STEPHENSON THO' &
HAROLD
jmbutts@msth.com

WAYNE TOLES
2112 N. Spencer Ave.
Indianapolis, IN 46218